409 So.2d 1061 (1981)
DEPARTMENT OF TRANSPORTATION, Seaboard Coast Line Railroad Company, et al., Appellants,
v.
Sheila WEBB, Linda Strong, et al., Appellees.
Nos. VV-79, VV-103.
District Court of Appeal of Florida, First District.
November 17, 1981.
Rehearing Denied March 3, 1982.
*1062 DuBose Ausley and William M. Smith of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellant Seaboard Coast Line.
H. Reynolds Sampson, Alan E. DeSerio and James W. Anderson, Tallahassee, for appellant Dept. of Transp.
Stanley B. Powell of Powell, Powell & Powell, Niceville, for appellees Webb and Strong.
Paul A. Bernardini of LaRue & Bernardini, Daytona Beach, and Cynthia S. Tunnicliff of Spector, Tunnicliff & McCord, Tallahassee, for appellee Grant.
L. Lee Williams, Jr., and Robert C. Apgar of Peeples, Earl, Smith, Moore & Blank, Tallahassee, for Florida Defense Lawyers' Ass'n, amicus curiae.
Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amicus curiae.
PER CURIAM.
Seven points on appeal involving contribution, statutory immunity, various evidentiary matters, the trial court's failure to instruct on punitive damages, and the viability of Florida's doctrine of joint and several liability are presented for our review of the verdict and judgments entered in this negligence action. For the reasons expressed below, we affirm.
Five students were riding to school in northern Leon County when their car collided with a Seaboard Coast Line train. The driver was killed, one passenger required amputation of both legs, and the other passengers were seriously injured. Passengers Webb and Strong filed a negligence action against SCL, locomotive engineer Williams, and the Department of Transportation which was responsible for planning and maintaining the crossing. SCL and Williams filed a third-party complaint for contribution and indemnity against the estate of Grant (the deceased driver), Herring (the owner of the automobile), and Maryland Casualty Company (Herring's insurer). The third-party complaint was answered by the driver's personal representative, on behalf of her children, who filed a counterclaim against SCL and a cross claim against DOT and Herring for the wrongful death of the driver. Before trial, the judge entered summary judgment in favor of Herring and Maryland Casualty on the contribution claim.
Also before trial, the judge denied a defense motion in limine which had been directed at excluding, among other things, evidence of prior accidents at the intersection and evidence that additional signals were planned before, but installed after, the accident. The judge additionally denied the plaintiffs' request for the standard jury instruction on punitive damages.
The jury found the driver 75% at fault, DOT 20%, Seaboard Coast Line 5%. Damages were assessed at $700,000 for Webb, *1063 $10,000 for Strong, and $150,000 each for the driver's two children. Accordingly, the judge found DOT and SCL jointly and severally liable to the driver's children in the amount of $37,500 each ($150,000 reduced by 75%).
The judgments were further reduced pursuant to Section 768.041, Florida Statutes, because of settlement money the plaintiffs had received. Herring, Maryland Casualty and the driver had settled with Webb for a total of $13,000 and with Strong for a total of $1,000. Herring and Maryland Casualty had settled with the driver (on behalf of her children) in the amount of $2,000. To reflect these agreements, an amended final judgment was entered finding DOT and SCL jointly and severally liable to the driver's two children in the amount of $36,500 each, Webb $687,000 and Strong $9,000.
The bulk of the argument in this appeal concerns SCL's contention that the concept of joint and several liability in Florida has been, or should be, superseded by the doctrine of comparative negligence. We reject this notion because it misconceives comparative negligence theory. Comparative negligence, as defined in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), is a device designed to allow compensation for plaintiffs who may themselves be partly negligent, instead of eliminating their recovery altogether under the common law doctrine of contributory negligence. SCL and the amicus Florida Defense Lawyers' Association argue that because the Hoffman opinion permits juries to apportion damages according to the proportion of fault of each party, the concept of joint and several liability no longer has a place in Florida courts. However, this argument ignores Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975) and subsequent statutory developments. In Lincenberg, the court decided that the doctrine of comparative negligence was not incompatible with the 1975 version of the Uniform Contribution Among Joint Tortfeasors Act, Section 768.31, Florida Statutes (1975), which required that fault could not be the basis for determining a defendant's contribution. The present contribution statute provides that relative degrees of fault shall be the basis for determining contribution. Section 768.31(3)(a) Florida Statutes (1979).
Clearly, if the interplay between comparative negligence and the contribution statute was workable in 1975, it is even more workable now. We must reject the appellant's arguments that the law of comparative negligence requires a pure apportionment of damages. See Lincenberg at 392, n. 2.
SCL further argues that the driver's settlement release which was executed by Webb and Strong for $14,000 should act as a settlement by Webb and Strong for 75% of their claim. However, Section 768.31(5)(a), Florida Statutes, provides that such a release "reduces the claim against the others to the extent of any amount stipulated by the release." The plain language of the statute supports the trial judge's decision that the judgment should be reduced by $14,000, not by 75% of the total award.
The decision to admit evidence of prior accidents at the railroad crossing was within the sound discretion of the trial judge. See Friddle v. Seaboard Coast Line Railway, 306 So.2d 97 (Fla. 1975); Lawrence v. Florida East Coast Railway Company, 346 So.2d 1012 (Fla. 1977).
The judge also properly admitted evidence of remedial measures taken by the defendants after prior accidents but before the accident in question. We construe Section 90.407, which prohibits the admission of evidence of remedial measures "taken after an event" as addressing those measures taken after the event giving rise to the cause of action. SCL argues that this evidence was unfairly admitted because the defendants offered to stipulate to the dangerous nature of the crossing. However, the jury in this case was entitled to know the extent and nature of the defendants' knowledge of the crossing in order to assess negligence.
Finally, the Department of Transportation contends it should have been declared immune from tort liability in this case because the installation of warning devices *1064 and the establishment of an adequate line of sight for approaching motorists and engineers (and impliedly, any maintenance of the crossing which may have contributed to its dangerous condition) should be construed as "planning" activities, which are immune from suit, instead of "operational" activities, which are not. See Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). Because of the detailed and expert planning necessarily involved in deciding where, when or how to take safety measures at the crossing, DOT argues, this should be considered a planning function, especially since budgetary matters must be considered in the decision-making process.
However, this analysis is unhelpful because every operational activity undertaken by DOT must at some point entail planning, which would cloak the department in absolute immunity. See Collom v. City of St. Petersburg, 400 So.2d 507 (Fla. 2d DCA 1981).
The department has not demonstrated that its action or inaction at this admittedly dangerous railroad crossing was based upon "basic governmental policy,"[1] or that the jury's determination of negligence in this case was merely an exercise in second-guessing "the propriety of governmental objectives or programs"[2] which the court in Commercial Carrier sought to protect.
On cross appeal, we also affirm the judge's rejection of a jury instruction on punitive damages. There was no evidence tending to show that punitive damages could properly be applied. See Ellis v. Golconda Corp., 352 So.2d 1221 (Fla. 1st DCA 1977), cert. denied 365 So.2d 714 (1978). See also Carraway v. Revell, 116 So.2d 16 (Fla. 1950).
SHIVERS and WENTWORTH, JJ., and WOODIE A. LILES (Ret.), Associate Judge, concur.
NOTES
[1] 371 So.2d at 1019, quoting Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965).
[2] Id.