468 So.2d 249 (1985)
Nadine M. JOHNSON, Individually, and As Personal Representative of the Estate of Scott E. Johnson, Deceased, Appellant,
v.
COLLIER COUNTY, Appellee.
No. 84-544.
District Court of Appeal of Florida, Second District.
February 20, 1985.
*250 Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellant.
Ronald L. Napier, P.A., Naples, for appellee.
SCHEB, Acting Chief Judge.
Appellant, the plaintiff below, challenges the trial court's entry of a final summary judgment in favor of Collier County based on the county's sovereign immunity. We affirm.
Nadine M. Johnson, individually, and as personal representative of the estate of her late husband, Scott E. Johnson, filed suit against Collier County and several other defendants. She sought damages because her late husband was electrocuted while operating a power drill connected to a temporary service pole at a construction site.
Plaintiff's complaint alleged that Collier County's personnel inspected the construction site where Johnson worked to determine whether the electrical wiring system complied with the National Electrical Code as adopted and supplemented by a county ordinance. The county's inspectors, the complaint charged, were negligent in failing to discover and require a correction of various code violations that existed in the wiring and that, as a result of their negligence, Johnson was injured and subsequently died.
Collier County answered the complaint by generally denying the allegations and asserting several affirmative defenses including one claiming it was not liable because of its sovereign immunity. On the basis of this latter defense, the county moved for final summary judgment contending there was no genuine issue as to any material facts and that it was entitled to judgment as a matter of law. The trial court granted the motion and entered final summary judgment against the plaintiff. This appeal ensued.
Appellant seeks reversal on the ground that the county's enforcement of safety code standards is ministerial and does not rise to the status of a basic governmental program or planning function for which the government remains immune from tort liability. See Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) (concluding that planning or policy making governmental functions should remain protected by sovereign immunity, but that operational functions could be the subject of tort liability); § 768.28, Fla. Stat. (1979). In support of its argument, appellant relies primarily on four recent decisions from our sister courts. Each is on point. In Jones v. City of Longwood, 404 So.2d 1083 (Fla. 5th DCA 1981) (2-1 decision), petition for review denied, 412 So.2d 467 (Fla. 1982), the fifth district held that an ordinance requiring the city to periodically inspect all buildings and structures within the city did not leave sufficient discretion in the designated officials to elevate to a planning level their decisions as to when and how often to make inspections. Thus, their acts and functions pursuant to the ordinance constituted operational level activity. In Trianon Park Condominium Ass'n v. City of Hialeah, 423 So.2d 911 (Fla. 3d DCA), petition for review granted, Case No. 63,115 (Fla. July 1, 1983), the third district held that even though an initial determination by the city of whether to inspect and certify construction within its boundaries was a planning decision within the meaning of Commercial Carrier, that *251 the city's subsequent performance of inspection and certification was an operational level activity, which gives rise to liability in tort under section 768.28. The fourth district subsequently agreed with the rationale of Trianon. See Manors of Inverrary XII Condominium Ass'n v. Atreco-Florida, Inc., 438 So.2d 490 (Fla. 4th DCA 1983) (2-1 decision), petition for review dismissed, 450 So.2d 485 (Fla. 1984) (on-site inspection to determine compliance with building regulations held operational activities of city). Finally, in Bryan v. State, Department of Business Regulation, 438 So.2d 415 (Fla. 1st DCA 1983), petition for review granted, Case No. 64,464 (Fla. Apr. 23, 1984), the first district held that a governmental decision to administer safety inspections and require certification of elevators pursuant to guidelines was a planning level function, but that subsequent performance of those functions by state employees was an operational level activity for which the state may be held liable in tort.
The county, on the other hand, seeks to sustain the trial court's judgment based on our decision in Neumann v. Davis Water and Waste, Inc., 433 So.2d 559 (Fla. 2d DCA), petition for review denied, 441 So.2d 632 (Fla. 1983). Indeed, it appears that the trial judge predicated his decision directly on Neumann, where we held that the State Department of Environmental Regulation's decision as to whether to police construction of a sewage treatment plant did not fit neatly into either the planning or operational characterization; yet, it was a purely governmental function for which the state historically was immune from tort liability. In that case the Department of Environmental Regulation did not design, construct, own, operate, or maintain the plant. We pointed out that decisions as to when, where, or what to inspect by a governmental entity are purely governmental functions.
Likewise, Collier County did not design, construct, own, operate, or maintain the temporary service pole at the construction site where Johnson was electrocuted. Furthermore, as we noted in Neumann, the record here discloses the claims being pursued against other parties against which the plaintiff may have recourse, giving her remedies other than suit against the county.
There will always be certain essential activities of the government which must remain immune from tort liability. We think the level of performance of governmental inspections is one of those areas in the basic discretionary area of the government. As Judge Ott observed in Neumann, the government cannot become the insurer of those injured when its laws and regulations are broken or safety measures that it imposes are ignored. If the legislature by enactment of section 768.28 intended otherwise, it should clarify its intent.
Accordingly, we affirm the final summary judgment and note that our decision conflicts with the decisions of the First, Third, Fourth, and Fifth District Courts of Appeal referred to in this opinion. We also note that the question of whether allegedly negligent inspection of a building can render a government liable in tort has been certified to the Supreme Court of Florida as a question of great public importance. See Trianon.
CAMPBELL and LEHAN, JJ., concur.